Dominic J. Picca (DP-2376)
MINTZ LEVIN COHN FERRIS
GLOVSKY and POPEO, P.C.
666 Third Avenue
New York, New York 10017
(212) 935-3000

Alec J. Zadek
MINTZ LEVIN COHN FERRIS
GLOVSKY and POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 348-4434
(*pro hac vice application forthcoming*)

*Attorneys for Plaintiff STM Asset Holdings, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
:
STM ASSET HOLDINGS, LLC, :
:
Plaintiff, :
:
-against- : **COMPLAINT**
:
ST. MAARTEN TELECOMMUNICATION :
HOLDING COMPANY, N.V., :
:
Defendant. :
:
------------------------------------------------------------------------x

Plaintiff, STM Asset Holding, LLC, by its attorneys, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., as and for his Complaint against St. Maarten Telecommunication Holding Company, N.V. ("TelEm"), alleges as follows:

### NATURE OF THE ACTION

1. This is an action for (i) breach of contract, (ii) breach of the implied duty of good faith and fair dealing; and (iii) declaratory judgment, based upon TelEm's improper actions with respect to a purchase agreement and escrow agreement between the parties, dated September 29,

2016 (respectively, the "Purchase Agreement" and "Escrow Agreement") (A copy of the Purchase Agreement is attached as **Exhibit A** and a copy of the Escrow Agreement is attached as **Exhibit B**).

## THE PARTIES

7. Plaintiff STM is a limited liability company organized under Delaware law. STM is a wholly-owned subsidiary of Caribbean Asset Holdings, LLC, which is also a limited liability company organized under Delaware law. ATN VI Holdings, LLC, a limited liability company organized under Delaware law, wholly owns Caribbean Asset Holdings, and, in turn, is wholly owned by ATN VI, Inc., a Delaware corporation. The principal place of business for STM, Caribbean Asset Holdings, LLC, ATN VI, LLC, and ATN VI, Inc. is 500 Cummings Center in Beverly, Massachusetts.

8. On information and belief, Defendant TelEm is a foreign company formed under the laws of the Netherlands, with its principal place of business located at Soualiga Boulevard #5, in Pond Island, Philipsburg, on the Island Territory of St. Maarten. On information and belief, TelEm is owned by the Island Territory of Sint Maarten.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1330, because the dispute is between STM, a citizen of Massachusetts and Delaware, and TelEm, an agency or instrumentality of a foreign state.

10. In the alternative, if TelEm is held not to be an agency or instrumentality of a foreign state, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because this is a dispute between one citizen of Massachusetts and Delaware and another citizen

of a foreign state, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

11. TelEm waived its immunity pursuant to 28 U.S.C. § 1605(a)(1), when it "irrevocably submit[ted] to the exclusive jurisdiction of the state courts of New York and to the jurisdiction of the United States District Court for the Southern District of New York, for the purpose of any Action arising out of or relating to this [Purchase] Agreement . . . ." *See* Purchase Agreement, § 12.07.

12. TelEm further waived its immunity pursuant to 28 U.S.C. § 1605(a)(2), when it executed the Purchase Agreement and Escrow Agreement with STM, deposited $1,000,000.00 of the purchase price from the parties' transaction in an escrow fund located in New York, New York, and subsequently refused to release the escrow fund to STM in violation of the parties' Agreements.

13. Venue is properly in this District pursuant to 28 U.S.C. § 1391, because the escrow funds at issue are located in New York, New York, and the parties have agreed that any dispute between them may be heard in this District. *See* Purchase Agreement, § 12.07.

## FACTUAL BACKGROUND

### I. STM Sold the Company to TelEm.

14. On September 29, 2016, STM and TelEm executed the Purchase Agreement, whereby STM sold TelEm Caribbean Teleview Services, N.V., a St. Maarten limited liability company (the "Company"). The Company is in the business of providing cable television services and internet services in St. Maarten.

15. Concurrently with the execution of the Purchase Agreement, TelEm deposited $1,000,000.00 into an escrow account with MUFG Union Bank, N.A. (the "Escrow Agent"), in New York, New York (the "Escrow Fund").

16. The purchase price payable by TelEm to STM for the Company was reduced by the $1,000,000.00 paid into escrow.

17. The purpose of the Escrow Agreement was to secure STM's obligation to indemnify TelEm pursuant to Article XI of the Purchase Agreement.

18. The disposition and termination of the Escrow Fund is governed by the Escrow Agreement.

19. Pursuant to the Escrow Agreement, the parties agreed that the Escrow Fund would terminate on September 29, 2017; thereafter, the Escrow Fund would be released to an affiliate of STM, so long as TelEm had not previously made a claim pursuant to Article XI of the Purchase Agreement for the Escrow Fund.

**II.   TelEm Served STM and the Escrow Agent with a Defective Claim Notice Days Before the Escrow Fund Was Scheduled to Expire.**

20. On September 25, 2017, TelEm notified STM in writing that it "is or may be liable" for $714,620.00 in turnover taxes owed to St. Maarten and potentially $283,000.00 in associated penalties. TelEm labeled its letter a "Claim Notice," as defined by the Escrow Agreement. TelEm's letter is attached as **Exhibit C**.

21. Turnover tax is a tax that is levied on non-resident entrepreneurs that provide services within St. Maarten. If a non-resident entrepreneur does not pay the applicable turnover tax, then the tax may be levied on the customer.

22. Prior to September 29, 2017, neither TelEm nor the Company determined if the non-resident entrepreneurs who were paid for services delivered to the Company between 2011 and September 29, 2016 paid turnover taxes on the amounts paid to them by the Company.

4

23.     TelEm's Claim Notice was predicated on the assumption that every non-resident entrepreneur who did business with the Company between 2011 and September 29, 2016 owed and did not pay any turnover tax.

24.     On September 29, 2017, in accordance with the Escrow Agreement, STM disputed TelEm's Claim Notice and requested that TelEm provide further information concerning the alleged claim, including correspondence with any tax authorities concerning the alleged liability.  STM's September 29, 2017 letter is attached as **Exhibit D**.

25.     On October 4, 2017, TelEm notified STM that it had not received any correspondence from any tax authorities in St. Maarten with respect to the alleged liability for past-due turnover taxes and associated penalties. TelEm's October 4, 2017 letter is attached as **Exhibit E**.

26.     On November 10, 2017, STM demanded TelEm withdraw its Claim Notice and agree to the release of the Escrow Funds because "no tax liability ha[d] been assessed against or imposed on [TelEm]," by TelEm's own admission it had not suffered any indemnifiable losses under the Purchase Agreement, and STM had previously disclosed the potential turnover tax exposure to TelEm prior to execution of the Purchase Agreement.  STM's November 10, 2017 letter is attached as **Exhibit F**.

### III.    TelEm's Claim Notice Was Defective and in Breach of the Purchase Agreement and Escrow Agreement.

27.     Pursuant to Article XI of the Purchase Agreement, TelEm is entitled to indemnification "from, against and in respect of any Loss which [TelEm] suffers as a result of or arising from" any breach of a representation, warranty, or covenant made by STM or any taxes imposed on the Company attributable to the period before the September 29, 2016 closing.

5

28. The Purchase Agreement defines "Losses" as "actual and reasonable out of pocket losses, damages, liabilities costs and expenses that are incurred or suffered . . . ." Purchase Agreement, § 1.01.

29. Neither TelEm nor the Company has suffered any actual "Losses" arising from or related to the turnover tax liability alleged in the Claim Notice.

30. As of September 29, 2017, no turnover taxes had been imposed on the Company for the period before September 29, 2016.

31. To this date, no turnover taxes have been imposed on the Company for the period before September 29, 2016.

32. Neither TelEm nor the Company has determined if any turnover taxes are actually owed to St. Maartin for the period before September 29, 2016.

33. Notwithstanding the facts that no tax liability was imposed on TelEm or the Company and neither TelEm nor the Company suffered any actual Losses as of September 29, 2017, TelEm has refused to withdraw its Claim Notice and agree to the release of the Escrow Fund to STM's affiliate pursuant to the Escrow Agreement.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

34. STM repeats and realleges each and every preceding paragraph as if fully restated herein.

35. There is an actual controversy within the meaning of 28 U.S.C. § 2201, between STM and TelEm as to whether: (1) the Claim Notice is valid; and (2) TelEm must agree to the release of the Escrow Fund to STM's affiliate pursuant to the Escrow Agreement.

36.     STM seeks a declaration that TelEm's Claim Notice is invalid and that TelEm must agree to the release of the Escrow Fund to STM's affiliate in accordance with the Escrow Agreement.

### SECOND CLAIM FOR RELIEF
### (Breach of Contract)

37.     STM repeats and realleges each and every preceding paragraph as if fully restated herein.

38.     STM and TelEm are parties to the Purchase Agreement and Escrow Agreement, which provide, among other things, that if no Claim Notice is received by the Escrow Agent by September 29, 2017, then the Escrow Funds are to be released to an affiliate of STM.

39.     TelEm breached the Purchase Agreement and Escrow Agreement by submitting a defective Claim Notice to the Escrow Agent and a defective claim for indemnification to STM, which failed to set forth any loss suffered by, or taxes imposed on, TelEm or the Company.

40.     TelEm further breached the Purchase Agreement and Escrow Agreement by refusing to instruct the Escrow Agent to release the Escrow Funds to STM's affiliate pursuant to the Escrow Agreement.

41.     Pursuant to Section 12.10 of the Purchase Agreement, STM is entitled to its attorneys' fees if it prevails in this litigation.

42.     As a result of TelEm's breaches of the Purchase Agreement and Escrow Agreement, STM has suffered and will continue to suffer no less than $1,000,000.00 in damages, including, but not limited to its attorneys' fees which are recoverable pursuant to the parties' agreement.

## THIRD CLAIM FOR RELIEF
### (Breach of the implied covenant)

43.     STM repeats and realleges each and every preceding paragraph as if fully restated herein.

44.     The Purchase Agreement and Escrow Agreement contain an implied covenant of good faith and fair dealing.

45.     TelEm breached the implied covenant of good faith and fair dealing contained in both Agreements by submitting a defective Claim Notice to the Escrow Agent and a defective claim for indemnification to STM, which failed to set forth any loss suffered by, or taxes imposed on, TelEm or the Company.

46.     As a result of TelEm's breaches of the implied covenant of good faith and fair dealing, STM has suffered and will continue to suffer no less than $1,000,000.00 in damages, including, but not limited to its attorneys' fees which are recoverable pursuant to the parties' agreement.

WHEREFORE, based upon the foregoing, STM prays for judgment, as follows:

(i)     enter a judicial declaration that the Claim Notice is invalid and that TelEm must agree to release the Escrow Funds to STM's affiliate in accordance with the Escrow Agreement;

(ii)    enter judgment in favor of STM and against TelEm on Counts II and III and award damages in an amount, no less than $1,000,000.00, to be determined by the trier of fact;

(iii)   award STM its attorneys' fees, costs, and disbursements pursuant to the Purchase Agreement; and

(iv)    such other relief as the Court may deem just and proper.

Dated: New York, New York
February 15, 2018

        MINTZ, LEVIN, COHN, FERRIS,
        GLOVSKY and POPEO, P.C.

By: /s/ Dominic J. Picca
    Dominic J. Picca (DP-2376)
    Attorney for Plaintiff
    666 Third Avenue
    New York, New York 10017
    (212) 935-3000

By: /s/ Alec J. Zadek
    Alec J. Zadek
    Attorney for Plaintiff
    One Financial Center
    Boston, Massachusetts 02111
    (617) 348-4434
    (*pro hac vice application forthcoming*)